
Elizabeth D. DUNCAN, et al.,
Plaintiffs-Appellants,

v.

David B. POYTHRESS, et al.,
Defendants-Appellees.

No. 84–8076.

United States Court of Appeals,
Eleventh Circuit.

Jan. 24, 1985.

Kathleen Kessler, Atlanta, Ga., for plaintiffs-appellants.

Robert J. Winicki, Jacksonville, Fla., for amicus curiae Winicki.

Patrick McKee, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS[*], District Judge.

KRAVITCH, Circuit Judge:

Appellant Kathleen Kessler appeals the denial of her application for attorney's fees pursuant to 42 U.S.C. § 1988. During the early part of this litigation, Kessler represented plaintiffs Duncan and Stout; during the remainder of the litigation, after she was added as a plaintiff, Kessler represented herself. The lower court denied fees for the period in which Kessler represented herself under the theory that a lawyer who appears *pro se* is never entitled to attorney's fees under section 1988. The court denied Kessler fees for the time that she represented the other plaintiffs because it concluded that Kessler did not request such fees in her initial application. Finding that the court below erred in both rulings, we reverse.

## I.  BACKGROUND

Plaintiffs brought this suit pursuant to 42 U.S.C. § 1983 claiming that the refusal of state officials to call a special election to fill a position on the Georgia Supreme Court violated their constitutionally protected right to vote.[1]  Elizabeth Duncan

---

[*] Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

1.  For the complete facts of the underlying action, *see Duncan v. Poythress*, 657 F.2d 691 (5th Cir. Unit B 1981), *cert. granted* 455 U.S. 937, 102

and Elizabeth Stout were the only two plaintiffs at the time of the initial filing of the case and were represented by three lawyers: Kathleen Kessler, William Hollberg, and William Rucker. At the beginning of the trial, plaintiffs moved to amend the complaint to have Kessler added as a plaintiff. Plaintiffs did this because they felt it was important for Kessler to testify on behalf of plaintiffs.[2] The district court granted plaintiffs' motion subject to the condition that Kessler withdraw as counsel for plaintiffs Duncan and Stout. Kessler represented herself as an attorney *pro se* litigant throughout the remainder of ·this litigation.

Plaintiffs prevailed at trial and on appeal on their section 1983 claim. *Duncan v. Poythress,* 515 F.Supp. 327 (N.D.Ga.1981), *aff'd,* 657 F.2d 691 (5th Cir. Unit B 1981), *cert. granted,* 455 U.S. 937, 102 S.Ct. 1426, 71 L.Ed.2d 647, *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982). The trial court also awarded plaintiffs reasonable attorney's fees pursuant to 42 U.S.C. § 1988. *Id.* at 343. In an out-of-court settlement, defendants agreed to pay attorneys Hollberg and Rucker a total of $128,487 in fees, but refused to pay attorney's fees to Kessler. Kessler then applied to the district court for fees.

Kessler's application for fees and brief in support of that application were brought on behalf of "Kathleen Kessler, plaintiff *pro se.*" These documents requested fees for the entire time Kessler worked on this case, including both the time that she was counsel of record for plaintiffs Duncan and Stout and the time that she represented herself. The application also analyzed all such time according to the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).[3]

The district court denied Kessler's application for fees because she was a *pro se* litigant. Kessler moved for reconsideration under the theory that, even if she was not entitled to fees for the time that she represented herself, she could not be denied fees for the time that she represented the other two plaintiffs. The lower court denied Kessler's motion based upon its finding that she had failed to raise this ground for recovery earlier. *Duncan v. Poythress,* C81–199A, slip op. at 2 (N.D.Ga. Dec. 22, 1983).

## II. ATTORNEY'S FEES FOR LAWYER *PRO SE* LITIGANTS

The question before this court is whether attorneys who proceed *pro se* should be treated like other attorneys (prevailing plaintiff's attorney(s) presumptively entitled to fees[4]) or like lay *pro se* litigants (not entitled to fees) for the purposes of section 1988.

The court below denied Kessler's application for fees based on *Cofield v. City of Atlanta,* 648 F.2d 986 (5th Cir. Unit B 1981),[5] in which the court denied fees to the

---

S.Ct. 1426, 71 L.Ed.2d 647, *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982).

**2.** Specifically, plaintiffs wanted Kessler to testify about her personal contact with defendant Bowles, prior to the initiation of this suit, regarding his resignation.

**3.** *Johnson* lists the following factors to be utilized in determining the proper amount of attorney's fees for claims under section 1988: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. *See e.g., Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1937–38, 76 L.Ed.2d 40 (1983).

**4.** A prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912 (quoting *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)); *Hensley v. Eckerhart,* 103 S.Ct. at 1937.

**5.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

plaintiff, a nonlawyer, who appeared *pro se*.[6] The specific issue of fees for a lawyer appearing *pro se* was not addressed in *Cofield*. *Cazalas v. United States Department of Justice*, 709 F.2d 1051, 1055 n. 8 (5th Cir.1983); *Ehlers v. City of Decatur*, 696 F.2d 1006, slip op. at 2 (11th Cir.1983). Only one Court of Appeals, the Ninth Circuit, has considered the issue of whether a lawyer litigant proceeding *pro se* is entitled to attorney's fees under section 1988. *Ellis v. Cassidy*, 625 F.2d 227 (9th Cir.1980). The *Ellis* court determined that defendants who were attorneys and who represented themselves were entitled to fees. Although *Ellis* is unlike the present case in that it concerned a lawyer *pro se* defendant, the *Ellis* court's reasoning is, in large part, applicable to the present case. Indeed, *Ellis* was cited as persuasive authority in *Rybicki v. State Board of Elections*, 584 F.Supp. 849 (N.D.Ill.1984) (three-judge court) where an attorney *pro se* plaintiff was granted fees under section 1988. *But see Lawrence v. Staats*, 586 F.Supp. 1375 (D.D.C.1984) (attorney *pro se* plaintiff not entitled to fees).[7] Circuit courts are divided as to whether attorney *pro se* litigants are entitled to fees in contexts other than section 1988. *Falcone v. Internal Revenue Service*, 714 F.2d 646 (6th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984) (attorney-litigant in Freedom of Information Act (FOIA) suit denied fees); *Cazalas v. United States Department of Justice*, 709 F.2d 1051 (5th Cir.1983) (attorney-litigant entitled to fees in FOIA case); *White v. Arlen Realty and Development Corp.*, 614 F.2d 387 (4th Cir.), *cert. denied*, 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (fees denied attorney-litigant in Truth In Lending Act case); *Cuneo v. Rumsfield*, 553 F.2d 1360 (D.C.Cir.1977) (FOIA attorney-litigant entitled to fees, but nonattorneys also entitled to fees in D.C. Circuit. *Cox v. United States Department of Justice*, 601 F.2d 1 (D.C.Cir.1979).).

The plain language of section 1988 does not preclude an award of fees to a lawyer representing herself. The statute states in pertinent part:

> In any action or proceeding to enforce a provision of [section] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

Moreover, this court has determined that section 1988 "should be accorded broad interpretation since the statute is remedial in nature." *Williams v. City of Fairburn, Georgia*, 702 F.2d 973, 976 (11th Cir.1983). Thus, the absence of any express prohibition strongly suggests allowance of a fee award, unless the legislative history provides otherwise. The legislative history of section 1988 does not address this issue.

■ Absent express language on this issue in either the statute itself or its legislative history, we look to the purposes of section 1988 to determine whether granting attorney's fees to lawyer *pro se* litigants would further those purposes. Defendants assert, and the lower court found, that Kessler is not entitled to attorney's fees because "section 1988 is designed to assist average citizens who, were it not for the attorney's fees provision, would lack the ability to effectively pursue meritorious complaints." 572 F.Supp. at 778. Although Congress certainly intended section 1988 to help those without the financial resources to hire a lawyer, to the extent that the court below relied on the rationale that section 1988 is *only* intended to help those who cannot otherwise afford legal assistance, such reliance is misplaced. Plaintiff's counsel is not denied fees under section 1988 merely because the plaintiff is able to pay for counsel, *see, e.g., Riddell v. National Democratic Party*, 624 F.2d 539, 543 (5th Cir.1980);[8] *International Ocean-*

---

**6.** A number of other courts have also denied lay *pro se* litigants fees pursuant to section 1988. *E.g., Pitts v. Vaughn*, 679 F.2d 311 (3d Cir.1982); *Wright v. Crowell*, 674 F.2d 521 (6th Cir.1982); *Lovell v. Snow*, 637 F.2d 170 (1st Cir.1981); *Davis v. Parratt*, 608 F.2d 717 (8th Cir.1979).

**7.** The *Rybicki* and *Lawrence* courts, with their contrary results, are the only two federal district courts, other than the court below, to deal with this issue.

**8.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*ic Enterprises, Inc. v. Menton,* 614 F.2d 502, 503 (5th Cir.1980), or because plaintiff is not actually required to pay his or her lawyer. *See, e.g., Johnson v. University College of the University of Alabama in Birmingham,* 706 F.2d 1205, 1210 (11th Cir.1983); *Watkins v. Mobile Housing Board,* 632 F.2d 565, 567 (5th Cir.1980); *Ellis v. Cassidy,* 625 F.2d at 230. Thus, the financial need of the litigant is not the determinative factor in awarding fees under section 1988.[9]

Moreover, contrary to the implication of defendants' argument, the fact that Kessler is a lawyer and therefore can (and did) represent herself, does not mean that she does not need section 1988 in order to enable her to pursue a case like the present one. Merely because plaintiff Kessler need not pay an actual fee to attorney Kessler does not mean that she is able to spend the time and pay the overhead involved in this case, absent at least the hope of remuneration. *See Cazalas,* 709 F.2d at 1057.[10] In fact, preclusion of other employment by the attorney is one of the *Johnson* factors. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 718. This factor is no less relevant when the section 1983 plaintiff is a lawyer rather than any other person. *See Ellis,* 625 F.2d at 231 ("The appellees [lawyer *pro se* defendants] have actually suffered pecuniary loss, since they have been required to take time away from their prac-

tices to prepare and defend the suit.") [11]; *Rybicki,* 584 F.Supp. at 860 (A *pro se* lawyer "actually suffers a pecuniary loss due to the time lost from the lawyer's practice.").[12] As Kessler points out, another more general purpose of section 1988 is to encourage private citizens to vindicate important constitutional and Congressional policies. S.Rep. No. 1011, 94th Cong., 2d Sess. 2–3, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5909–10; *Riddell,* 624 F.2d at 543 (5th Cir.1980). This is exactly what Kessler and her coplaintiffs did. A fee award is just as necessary to enable plaintiff Kessler to do this as it would be for a nonlawyer.

Defendants also assert that, in the present case, it was not necessary for Kessler to represent herself because the other two plaintiffs' attorneys could have represented Kessler as well with no appreciable additional effort on their part. The problem of redundant legal services is exactly the type of issue with which the *Johnson* factors are designed to deal. 488 F.2d at 717. The existence of other counsel in the case goes to the amount of fees Kessler may be entitled to, an issue not before this court, not to her entitlement to fees as a lawyer *pro se* litigant.

Defendants' assertions that Kessler is not entitled to fees, either because as a lawyer she has free access to the legal system or because other counsel was avail-

---

**9.** *Lawrence v. Staats,* 586 F.Supp. 1375 (D.D.C. 1984), focuses on the financial need of the litigant as a prerequisite to fees, concluding that "the law need only provide that litigants with meritorious claims will be compensated for actual funds expended to pay for an attorney's services in order to achieve that goal [meaningful access to the courts]." *Id.* at 1379. Binding precedent, however, mandates that expending funds is not a prerequisite to a fee award.

**10.** The lower court, again relying on *Cofield,* determined that *Cazales* is inapplicable to the present case because it concerned fees under FOIA. *Cofield* found FOIA fee cases inapplicable to the section 1988 context because the "history, language, and purpose of the Freedom of Information Act differs significantly from those of the civil rights statutes . . . ." 648 F.2d at 988. For example, FOIA actions are likely to be brought *pro se,* damages are generally not involved, and fees may be awarded to fulfill a

punitive function. *Id.* at 988, n. 4. Both the attorney's fees provision of FOIA and section 1988, however, were enacted as incentives for private individuals to pursue their rights. Thus, these differences do not distinguish the two statutes in terms of the need to compensate lawyer *pro se* litigants in order to enable them to pursue such litigation.

**11.** Although the Congressional purposes behind awarding attorney's fees to defendants differ from those behind awarding such fees to plaintiffs, both lawyer *pro se* plaintiffs and lawyer *pro se* defendants are subject to the same pecuniary loss as a result of *pro se* representation in a section 1983 suit.

**12.** This loss is distinguishable from opportunity costs lost to a nonlawyer litigant because the Congressional intent behind section 1988 was to provide *legal* services as discussed *infra.*

able to represent her, are unpersuasive. Under either of these rationales, had Kessler retained additional counsel to represent her in this litigation, such counsel would not have been entitled to fees under section 1988. Yet, at oral argument before this court, defendants admitted that attorney's fees would be allowed to a lawyer hired by Kessler to represent her. Thus, defendants are asserting the anomalous position that Kessler could have hired any other lawyer besides Kessler and he or she would have been entitled to fees. A related anomaly is the fact that anyone else could have hired Kessler to be his or her lawyer and, if that plaintiff prevailed as Kessler did here, Kessler would have been entitled to fees.

This second anomaly illuminates the distinction between a lawyer *pro se* litigant and a lay *pro se* litigant. A lay *pro se* litigant could not be hired by someone else to represent him or her in a section 1983 suit; a lawyer *pro se* litigant could be. As pointed out in *Cofield*, the case relied on by the court below, the purpose of section 1988 is to "enable and encourage a wronged person to retain a lawyer." 648 F.2d at 988.[13] *See also Ellis*, 625 F.2d at 231 ("Legal Services have actually been performed"); *Rybicki*, 584 F.Supp. at 859 ("The courts [in denying lay *pro se* litigants fees] reason that the principal purpose of § 1988 (to encourage laypersons to retain lawyers in meritorious civil rights cases) is not furthered by compensating a nonlawyer litigant who decides to proceed

*pro se*."). The court below echoed these sentiments: "The primary concern of Congress was to increase the level of competence with which such complaints are prosecuted ...." 572 F.Supp. at 778–79. *See also Lawrence*, 586 F.Supp. at 1379.

In the case of a lawyer *pro se* litigant such as Kessler, this Congressional purpose is fulfilled. Kessler utilized a lawyer to pursue her claims; therefore, she utilized the kind of skilled advocate that the framers of section 1988 envisioned. The fact that the lawyer she chose was herself is inconsequential. Thus, although we agree with the court below that section 1988 was not passed for the benefit of lawyers, it was passed so that plaintiffs, lay or lawyer, could have legal representation in cases, like the present one, where important constitutional rights are at stake.[14]

A further distinction between a lay and a lawyer *pro se* litigant is the fact that a lay *pro se* litigant cannot sell his or her legal skills in the open market. Section 1988 case law tells us that the amount of fees a lawyer recovers is not what she or he would have actually made on another case, but rather, what the market value for such services was. *See Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). *Johnson v. Georgia Highway Express, Inc.*, 588 F.2d 714. Thus, a federally funded Legal Services Corporation lawyer with the same credentials as a lawyer with a lucrative private practice is giv-

---

**13.** The *Cofield* court refers to section 1988's purpose as encouraging legal representation throughout the course of the opinion, *e.g.*, "Congress specifically approved the standards established in *Johnson v. Georgia Highway Express* and its legacy, pointing out that '[t]hese cases have resulted in fees which are adequate to *attract competent counsel*, but which do not produce windfalls ...' S.Rep. No. 94–1011, 94 Cong.2d Sess. 6, *reprinted in* [1976] U.S.Cong. & Ad.News 5908, 5913." 648 F.2d at 987 (emphasis added); "[i]t is apparent that Congress thought that such people ought to have access to *legal representation*." *Id.* at 988 (emphasis added). The *Cofield* court pointed out that although lawyers are not the only ones who can be worthy advocates, the Congressional purpose behind section 1988 was to attract those with legal training.

**14.** Defendants also claim that the attorney-client relationship is the prerequisite to a fee award citing *Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977) where the court stated:

The existence of an attorney-client relationship, a status that exists wholly independently of compensation, is all that is required [to qualify for attorney's fees under section 1988]. Congress did not intend that vindication of statutorily guaranteed rights would depend on the private party's economic resources or on the availability of free legal assistance.

*Id.* at 164. The *Gore* court, however, was not considering *pro se* representation, but rather, whether financial need was a prerequisite to an award. The court's comments on the attorney-client relationship were mere dicta.

en the same fee under section 1988. *See, e.g., Johnson v. University College of Alabama in Birmingham,* 706 F.2d at 1210; *Watkins,* 632 F.2d at 567. The lay litigant's legal services have no market value since he or she could not sell legal services in the market place. In addition, the *Johnson* factors include opportunity costs, 488 F.2d at 718, and such costs are more difficult to evaluate for the lay litigant. *See Cazales,* 709 F.2d at 1057;[15] *Ellis,* 625 F.2d at 231.[16]

Several policy arguments have been raised to support denying fees to lawyer *pro se* litigants, none of which we find persuasive. First, it has been claimed that a lawyer representing himself or herself lacks the objectivity necessary to provide a check against groundless or frivolous litigation.[17] However, as the *Cazales* court found in regard to FOIA, section 1988 was not enacted to insure objective representation by an attorney, but rather, to promote vigorous advocacy. 709 F.2d at 1056. Moreover, counsel representing plaintiffs are often committed to a certain social ideology and thus are not totally independent or objective. In addition, a lawyer-litigant,

like any other lawyer, only receives compensation if she or he prevails. A groundless case, of course, would not prevail. A second rationale stems from the fear that a cottage industry will develop among inactive attorneys who will bring section 1983 cases to support themselves. Again, only a prevailing attorney will receive remuneration. Additionally, because an attorney is compensated according to the *Johnson* factors which include the experience, reputation, and ability of the attorney, such an inactive attorney would be compensated at a low rate. Moreover, if applying section 1988 to lawyers who represent themselves encourages lawyers to look for violations of constitutional and statutory rights and then seek to vindicate those rights, such application is not contrary to the purposes of the statute. Finally, in the present case, Kessler tried to avoid litigation by asking defendants to call a special election. Although not forced into this litigation in the same sense as was the defendant in *Ellis,* Kessler was required to bring suit if she wanted to vindicate her important right of franchise. Thus, we conclude that Kessler is entitled to fees for the period in which she represented herself as a lawyer *pro se* litigant.[18]

**15.** The distinctions between FOIA and section 1988 discussed in note 10, *supra,* also do not distinguish the two statutes in terms of the feasibility of calculating fees for lawyer and lay *pro se* litigants.

**16.** It also bears noting that in several other cases involving attorney's fees requests pursuant to various statutes, courts have noted that the prevailing *pro se* plaintiff seeking attorney's fees was not a lawyer. *E.g., Wolfel v. United States,* 711 F.2d 66, 68 (6th Cir.1983); *Owens-El v. Robinson,* 694 F.2d 941, 942 (3d Cir.1982); *Pitts v. Vaughn,* 679 F.2d 311, 313 (3d Cir.1982); *Clarkson v. IRS,* 678 F.2d 1368, 1371 n. 3 (11th Cir.1982); *Barrett v. Bureau of Customs,* 651 F.2d 1087, 1090 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Crooker v. United States Dept. of Justice,* 632 F.2d 916, 921 (1st Cir.1980); *Hannon v. Security National Bank,* 537 F.2d 327, 328–29 (9th Cir.1976). Thus, these courts, although not confronted with a lawyer *pro se* litigant, have recognized that a lawyer is differently situated from a lay litigant for the purposes of a fee award.

**17.** Lack of objectivity has been used to support denying attorney's fees to lay *pro se* litigants. *See, e.g., Pitts v. Vaughn,* 679 F.2d 311, 312 (3d Cir.1982). A lawyer, however, unlike a lay liti-

gant, has been trained to distinguish meritorious claims from frivolous ones. *Cf. Barrett v. Bureau of Customs,* 651 F.2d 1087, 1089–90 (5th Cir.1981).

**18.** A further rationale against awarding attorney's fees to lawyer *pro se* litigants is that it encourages lawyers to act as both advocate and witness in contravention of the ethical prohibition against lawyers performing such dual roles. *See Rybicki,* 584 F.Supp. at 860–61 (majority opinion); *id.* at 865–66 (Grady, J., dissenting in part and concurring in part). This prohibition is reflected in the ABA Model Code of Professional Responsibility (1980) which states as an "ethical consideration":

> EC 5–9 Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent;

## III. FEES FOR PERIOD KESSLER REPRESENTED THE OTHER PLAINTIFFS

In its discussion of the merits, the lower court ordered that "plaintiff shall recover ... all reasonable attorney's fees from the defendants for time spent litigating this action. 42 U.S.C. § 1988." 515 F.Supp. at 343.[19] When defendants refused to pay her for her work, Kessler applied to the court for fees. In her petition for fees, Kessler did not distinguish between time spent representing herself and time spent representing the other plaintiffs. As defendants point out, Kessler did not mention the fact that she represented others as a theory for recovery; rather, she only asserted that "[p]laintiff attorney Kessler, representing herself, may recover attorney's fees."

The lower court denied Kessler's application for fees based on her position as a *pro se* litigant without commenting on the time that she spent representing the other plaintiffs. Kessler's motion for reconsideration dealt solely with the time that she spent representing the plaintiffs Duncan and Stout. The court below denied this motion, stating that it "has not been informed of the reason Kessler failed to raise previously this issue as to her entitlement to a recovery of fees...." *Duncan v. Poythress*, No. C81–199A, slip op. at 2 (N.D.Ga. Dec. 22, 1983), and that Kessler was now attempting to "raise a different ground for recovery ...." *Id.*

Although Kessler could have made her fee application clearer, we feel that the lower court abused its discretion by using this ambiguity to deny Kessler fees for the hours that she represented

---

the function of an advocate is to advance or argue the case of another, while that of a witness is to state facts objectively.

*See also* EC 5–10, the corresponding "disciplinary rules" DR 5–101 and 5–102, and Model Rules of Professional Conduct Rule 3.7. Even if Kessler can be said to have violated this ethical canon, it is not apparent why denial of fees is an appropriate sanction. *See Scope,* Model Rules of Professional Conduct (Proposed Final Draft May 30, 1981). Moreover, the rule is inapplicable to an attorney *pro se* litigant. The ethical canons do not prohibit a lawyer from representing himself or herself, *see e.g., O'Neal v. Bergan*, 452 A.2d 337, 344 (D.C.App.1982), and logic tells us that such a *pro se* litigant often testifies on his or her own behalf. In addition, the rationales behind the advocate-witness rule do not apply to the lawyer *pro se* litigant. As stated by the Supreme Judicial Court of Massachusetts:

> To apply DR 5–102 when the testifying advocate is a litigant in the action miscomprehends the thrust of the rule. DR 5–102 regulates lawyers who would serve as counsel and witness for a party litigant. It does not address that situation in which the lawyer *is* the party litigant. Any perception by the public or determination by a jury that a lawyer litigant has twisted the truth surely would be due to his role as a litigant and not, we would hope, to his occupation as a lawyer. *See International Elecs. Corp. v. Flanger*, 527 F.2d 1288, 1294 (2d Cir.1975). As a party litigant, moreover, a lawyer could represent himself if he so choose.

*Borman v. Borman*, 378 Mass. 775, 393 N.E.2d 847, 856 (1979) (footnote omitted).

Thus, we conclude that the advocate-witness rule is not applicable to the attorney *pro se* litigant. Moreover, in Kessler's case there are additional reasons why the rule is not applicable. First, a judge was the trier of fact, thus, there was no danger that the trier of fact could not distinguish between testimony and advocacy. Second, Kessler was not put in the "unseemly and ineffective position of arguing her own credibility" because she did not act as an advocate during the course of the trial, rather, such duties were performed by plaintiffs' other lawyers. *Cf. Bottaro v. Hatton Associates*, 680 F.2d 895 (2d Cir.1982); *International Electronics Corp.*, 527 F.2d at 1294.

Finally, under Ethical Consideration 5–10 and Disciplinary Rules 5–101 and 5–102 of the Model Code, a lawyer can testify if, *inter alia,* the testimony relates solely to an uncontested matter or the testimony is solely a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony. In the present case, Kessler's brief testimony related solely to whether she had gone to see defendant Bowles on December 14, 1980, to ask him about his resignation, and the fact that he refused to answer Kessler's questions. Plaintiff's counsel did not anticipate that this testimony would be contradicted, and, indeed, defendant Bowles did not contest this matter. This testimony was introduced by plaintiffs merely to show the element of knowledge on behalf of defendants.

19. The parties were also directed to attempt to resolve the matter of attorney's fees themselves, and, if they failed to reach agreement, were instructed to petition the court for resolution of the matter. 515 F.Supp. at 343.

the other plaintiffs. The court was clearly erroneous in finding that, in her first application, Kessler did not apply for fees for the time that she represented the other plaintiffs. A fee application need not assert a theory or ground supporting recovery; rather, it need only document the hours spent—which Kessler's application did.[20] This is so, not only because plaintiffs are presumptively entitled to fees under section 1988,[21] but also because plaintiffs in the present case had already been granted attorneys' fees. 515 F.Supp. at 343. Kessler reasonably assumed that the question of fees for the time that she represented the other plaintiffs was not in issue. Thus, Kessler is entitled to fees for the period in which she represented plaintiffs Duncan and Stout.

For the foregoing reasons, the judgment of the district court is REVERSED and this case is REMANDED for a determination of the amount of Kessler's fee award.

Nichols, Senior Circuit Judge, sitting by designation, dissented and filed opinion.

---

**20.** Kessler's application also applied the *Johnson* factors to the time that she represented the other plaintiffs as well as to the time that she represented herself.

**21.** *See* note 4, *supra*.